## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JASON L.,**[1] | ) | |
| | ) | **No. 22 CV 2255** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **FRANK BISIGNANO, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | **May 29, 2025** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION and ORDER

Jason L., who has a history of mental illness, substance abuse in remission, and homelessness, seeks disability insurance and social security income benefits ("DIB" and "SSI," respectively) asserting that he is disabled by degenerative changes of the lumbar spine, obesity, and major depressive and anxiety disorders. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for benefits. For the following reasons, Jason's remand request is granted:

## Procedural History

Jason filed DIB and SSI applications in July and August 2019, respectively, claiming disability onset on June 30, 2010. (Administrative Record ("A.R.") 228, 326-31.) After his applications were denied initially and upon reconsideration at the administrative level, (id. at 246-55), he sought and was granted a hearing before an

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Jason's first name and last initial in this opinion to protect his privacy to the extent possible.

Administrative Law Judge ("ALJ"), (id. at 266-81). Jason appeared with his attorney at a June 2021 telephonic hearing at which he and a vocational expert ("VE") testified. (Id. at 124-62.) The ALJ then ruled in July 2021 that Jason is not disabled. (Id. at 228-37.) The Appeals Council denied Jason's request for review, (id. at 1-7), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Jason then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Jason argues that the ALJ: (1) crafted a mental residual functional capacity ("RFC") assessment that lacks the weight of substantial evidence; (2) improperly evaluated the mental opinion evidence; and (3) incorrectly assessed his subjective symptom allegations. (See generally R. 15, Pl.'s Br.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation . . . 'sufficient to allow [the] reviewing court[] to assess the

validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024) (citation omitted). Having considered the arguments and record under this standard, the court finds that remand is warranted.

The court focuses on Jason's arguments concerning the opinion evidence and RFC because any error here would require a reassessment of his ability to work. An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor directs the ALJ to consider and explain how the opinion is consistent with all other medical and non-medical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ may also, but is not required to, explain how he considered the medical source's specializations and relationship with the claimant and any other factors that tend to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

An RFC measures the tasks a person can perform given his or her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The

ALJ must incorporate a claimant's limitations, including those that are not severe, in developing the RFC, and may not simply dismiss a line of evidence that is contrary to the ruling. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether [he] considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and his conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

The ALJ here found "somewhat persuasive" the opinions of the state agency psychological consultants (the "Consultants"). (A.R. 235.) After reviewing Jason's medical records, the Consultants noted diagnoses of major depressive and anxiety disorders and assessed moderate limitations, including in understanding and remembering detailed instructions, maintaining concentration, persistence, and pace ("CPP") for extended periods, working with others without being distracted, and completing a normal workday without interruptions from psychologically based symptoms. (Id. at 202-03.) As a result of Jason's moderate CPP difficulties, the Consultants opined that he was limited to "simple and routine unskilled vocational activities [requiring no more than] 1-2 steps." (Id. at 182, 204, 222, 235.) While the ALJ accepted the Consultants' opinions as to Jason's ability to perform "simple, routine and repetitive tasks," albeit "not at a production rate pace," (id. at 233), the ALJ rejected their "1-2 step task" limitation based on Jason's conservative treatment and ability to shop in stores and manage his finances, (id. at 235).

The ALJ also found "somewhat persuasive" the psychological consultative examiner's ("CE") January 2020 opinion that Jason "could perform simple routine tasks" but rejected his opinions that Jason "would have difficulty managing mild to moderate work pressure and stress" and "may have difficulty retaining [instructions] over a number of working days." (Id. at 234, 856.) The CE noted that when he examined Jason and reviewed his medical records, Jason had been homeless for four months, presented as "very sad, low energy and quietly anxious," struggled with remote memory and serial sevens, and displayed limited insight and "very poor" eye contact. (Id. at 855.) The CE also detailed Jason's history of mental illness, noting past psychiatric hospitalizations, regular psychiatry and counselor visits for 10 years, hallucinations, paranoia, more than 19 years of struggling with major depressive disorder, sexual abuse beginning at age 10, death of his daughter when she was 16 years old, and crack cocaine abuse. (Id. at 853-54.) The CE listed Jason's diagnoses as "recurrent major depression," past chronic drug abuse, and personality disorder, and he could not rule out PTSD. (Id. at 855-56.) He recommended that Jason participate in "ongoing outpatient psychiatric care" and opined that Jason "currently appears to have the capacity to manage his own funds." (Id. at 856.) The ALJ accepted the CE's opinion limiting Jason to simple, routine tasks but rejected the remaining prescribed limitations—including as to Jason's difficulty retaining instructions—because the ALJ found them inconsistent with record evidence, including "routine treatment" and "findings of fairly good recent memory, average intelligence and full orientation." (Id. at 234.)

Jason argues that the ALJ erred when he rejected the Consultants' and CE's CPP-related limitations without supplying substantial evidence. (R. 15, Pl.'s Br. at 5.) He says the ALJ failed to explain how "conservative treatment" and an ability to "shop in stores and manage finances" undermine the Consultants' opinions that he cannot perform "more than 1-2 step tasks." (A.R. 234.) The government responds that the record reveals gaps in treatment, voluntary admission to treatment programs, and only medication management from 2014 to 2019. (R. 21, Govt.'s Mem. at 3.) The government also confirms that Jason's function report reveals his ability to shop in stores and manage his finances. (Id. (citing A.R. 389).)

Starting with Jason's "conservative treatment," the objective medical evidence shows that he participated in inpatient and outpatient treatment programs for mental impairments, including in June 2010 when he began a treatment program after presenting at the hospital with depressed mood and suicidal ideation, May 2019 when he was referred to an outpatient program because of depressed mood, and August 2020 when he was hospitalized with worsening mental health symptoms. (See A.R. 454-504, 513, 635-830, 1146-76, 1183-1224.) Although the ALJ indicates that Jason's treatment consisted primarily of medication management from 2014 to 2019, he was held at the Sheridan Correctional Center during that period. (Id. at 234.) In any event, the CE noted that Jason regularly visited psychiatrists for depression and anxiety symptoms during his six-year incarceration. (Id. at 854.) He was also prescribed psychotropic medications such as Fluoxetine, Alprazolam, Prazosin, Quetiapine, Clonazepam, and Trazodone to treat symptoms of his mental

impairments. (See id. at 513, 621, 624, 644-830, 1146, 1238-1400; see also id. at 854.) Given this evidence, it is unclear how Jason's purportedly conservative treatment supports the ALJ's conclusion that Jason could perform a greater number of steps than the one to two that the Consultants opined he could perform. As to the evidence of shopping and managing finances, the ALJ made no effort to connect these activities to the number of steps Jason could perform in a work environment. (See R. 15, Pl.'s Br. at 5.)

Jason correctly points out that the Consultants reviewed "the same evidence" as the ALJ and concluded that Jason was not capable of performing more than one-to two-step tasks. (Id. at 5-6.) Under the applicable regulations, the ALJ was required to explain the supportability and consistency of the Consultants' opinions in determining the persuasiveness of the medical opinions. *See* 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert*, 34 F.4th at 614. But the ALJ here failed to explain how the evidence he cites—so-called conservative treatment and an ability to shop or manage finances—supports his conclusion or is consistent with other medical sources. This omission is important because both Consultants endorsed moderate CPP limitations and opined that Jason cannot perform unskilled vocational activities with more than two steps, (A.R. 182, 204, 222, 235), and the CE similarly opined that Jason "may have difficulty retaining [instructions]," (id. at 856; see also id. at 1424 (treating psychiatrist's opinion that Jason is moderately limited in his ability to remember work-like procedures and maintain attention and concentration for extended periods)). Although this court cannot "reconsider facts, reweigh evidence, or resolve

conflicts," it must review "the ALJ's decision holistically to determine whether [he] grappled with evidence favorable to the claimant." *Chrisman, on behalf of N.R.C. v. Bisignano*, ___ F. 4th ___, 2025 WL 1378001, at *4 (7th Cir. May 13, 2025). The court cannot say that the ALJ did so in this case.

Jason next asserts that the ALJ improperly discounted the CE's opinion that Jason "would have difficulty managing mild to moderate work pressure and stress" and "may have difficulty retaining [instructions] over a number of working days." (R. 15, Pl.'s Br. at 9 (citing A.R. 856).) He argues that in rejecting these aspects of the CE's opinion, the ALJ failed to consider "all evidence," (id. at 10), and "articulate" and "explain" how he "considered the supportability and consistency factors," *Jones v. Dudek*, 134 F.4th 991, 994 (7th Cir. April 21, 2025) (internal quotations omitted). Had he done so, Jason says the ALJ would have had to confront a wealth of evidence showing that the CE's opinion is supported by his examination findings and the opinion is consistent with the record evidence. (R. 15, Pl.'s Br. at 6-11.) The court agrees. The ALJ only selectively cites to records showing "full orientation, fairly good recent memory, and average intelligence," (A.R. 234), and fails to explain how those findings negate the CE's observations.

Jason further challenges the ALJ's finding that treating psychiatrist Dr. Bradley Gordon's opinion was "not persuasive." (See Pl.'s Br. at 12-15 (citing A.R. 235-36, 1423-25).) Dr. Gordon began treating Jason in October 2020 and issued an opinion in June 2021 noting diagnoses of major depression, PTSD, and panic disorder, and opining that Jason's poor memory and difficulty thinking or

concentrating would cause him to miss work more than three days per month and be off task more than 20% of the workday. (A.R. 1423-25.) Dr. Gordon's opinion endorses greater off-task and work absence limitations than the Consultants' and CE's opinions. (Compare id. with id. at 180-82, 220-22.) But there are consistencies between Dr. Gordon's opinion and those of the Consultants and CE the ALJ did not address. Dr. Gordon, like the Consultants and CE, assessed a moderate CPP limitation and noted Jason's moderate difficulty remembering locations and work-like procedures and mild difficulty understanding, remembering, and carrying out very short and simple instructions. (Compare id. at 180-82, 220-21, 856 with id. at 1424.)

The ALJ nonetheless found Dr. Gordon's opinion not persuasive in part because the record notes improvement when Jason maintained consistent treatment for his mental impairments. (Id. at 236.) But the Seventh Circuit has admonished that claimants suffering from mental impairments may have difficulty maintaining treatment. *See Kangail v. Barnhart*, 454 F.3d 627, 630-31 (7th Cir. 2006) (noting that "mental illness in general . . . may prevent the sufferer from taking . . . prescribed medicines or otherwise submitting to treatment" (citations omitted)); *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently."). And regardless, the ALJ failed to consider the extent to which Dr. Gordon's own treatment records and other evidence supported his opinion and the opinion was consistent with other sources as is required.

The court cannot find these errors harmless. Based on the ALJ's hypothetical questions to the VE and the VE's testimony at the administrative hearing, the ALJ determined that Jason could perform Level 2 Reasoning jobs under the DOT, including inspector, marker, and router. (A.R. 236-37.) But a Level 2 Reasoning job requires more steps than a Level 1 Reasoning job, which is limited to one- to two-step tasks. *See Deborah B. v. Kijakazi*, No. 20 CV 7729, 2022 WL 1292249, at *2 (N.D. Ill. April 29, 2022). The Commissioner bears the burden of showing that a significant number of jobs exist in the national economy that a person with Jason's RFC could perform. *See id.* Because the ALJ failed to address his rejection of the Consultants' one- to two-step task limitation in accordance with the applicable regulations, *see* 20 C.F.R. §§ 404.1520c, 416.920c(b)(2), the ALJ's decision lacks the support of substantial evidence.

## Conclusion

For the foregoing reasons, Jason's remand request is granted, and this matter is remanded for further proceedings consistent with this opinion.

ENTER:

Young B. Kim
United States Magistrate